05-1553 Tegic Communications Corporation 05-1553 Tegic Communications Corporation The issue in this case is whether a public university may use the principle of sovereign immunity embodied in the Eleventh Amendment to create what this Court has called seriously unfair results by effectively eliminating the venerable customer-suit exception in cases where a public university brings a patent infringement action. But they use it all the time, don't they? They use it all the time, Your Honor, but as this Court held in Knight, there are limits to how far they can use it. Obviously a public university cannot use sovereign immunity once it has sued defendants, and as this Court held in Regents of the University of New Mexico against Knight, when a public university sues a group of named defendants, it also waives sovereign immunity with respect to any of their compulsory counterclaims, not limited to claims for recruitment. But doesn't the issue here come down not so much to whether the university waived its immunity for a counterclaim in a Texas court, but whether it waived its immunity for a declaratory action in another state? That is correct, Your Honor. But under the customer-suit exception, a suit by a manufacturer for a declaratory judgment, even if it's in another forum, is in effect just the functional equivalent of an intervention in the original action and a suit for a declaratory judgment counterclaim. So let's just think about what the district court has prevented us from doing. The district court below ruled that the Eleventh Amendment is an absolute bar to a manufacturer protecting its customers when they have been sued for using the manufacturer's product. As long as the manufacturer hasn't been named in the suit. So this is a case where the public university studiously avoided suing TGIC, the manufacturer of T9 software. Well, there's no question but that you could have intervened in the Texas suit. Your Honor, we think there is a question raised by the district court. We would argue, yes, we should be able to intervene, but the district court below expressed on page six of the opinion serious doubts whether the Eleventh Amendment might bar us from bringing any claim against the University of Texas unless and until the University of Texas sues us. So it's not clear that we can intervene in Texas because we would intervene in Texas and file declaratory judgment counterclaims raising the very same arguments we raised in the Washington suit, which are that the University of Texas 112 patent is invalid, unenforceable, and not infringed by T9 software or customers using the T9 software. So we submit at a minimum this court needs to reverse the implication on page six of the opinion that even if we intervened and filed counterclaims in Texas, the Eleventh Amendment would bar us because the University of Texas didn't sue us, we intervened and sued them. But you also did not consent to the transfer to the Western District of Texas. That is, Your Honor, the issue of whether to transfer to Texas we would submit is premature because that's a question about the proper venue. And venue is a question that involves equitable balancing of all the factors about which venue, Washington or Texas, would be better. We happen to think that Washington is a much superior venue. That's where the product was invented. That's where the overwhelming majority of the witnesses are. That's where the overwhelming majority of the documents are. But that is a question of venue and transfer. Well, it's more than a question of venue. It's also a question of personal jurisdiction, isn't it? Which was never really raised in the Western District of Washington. That's correct, Your Honor. All that is issued before you today is one single, very narrow question. And that is, did the District of Washington have subject matter jurisdiction? Or did the Eleventh Amendment deprive it of subject matter jurisdiction over the University of Texas because we formally and nominally sued the University of Texas rather than the University of Texas suing us? We submit you should reverse that ruling, the ruling that the Eleventh Amendment borrows subject matter jurisdiction here. And then, Your Honor, the District Court in Washington on remand can get to the issue of personal jurisdiction on which it hasn't yet found any facts. It can get to the issue of proper venue and the balance of hardships, balance of equities involved in whether or not to transfer from Washington to Texas. But you can't even get to those issues, which haven't been decided by the District Court, until you resolve the question that the District Court did decide. And all that the District Court said was, the Eleventh Amendment kicks us out of court on subject matter jurisdiction in Washington. Now, Your Honor, just to return to Judge Newman's question, we think that this case, as in Knight, is a case in which subject matter jurisdiction is entirely proper. Let's remember that in Knight, you held that a compulsory counterclaim brought by a defendant in a suit brought by a public university is permissible under the Eleventh Amendment, even though in isolation, a counterclaim is one in which the manufacturer is a plaintiff in the suit, suing in the counterclaim the public university. But as you said in Knight, it would create seriously unfair results if the public university could avail itself of the federal forum, come into federal court suing customers and or inventors, as in that case, and then say, but I'm sorry, you can't sue us back. I don't think it's that simple. And what troubles me isn't that they sued the university. What troubles me is that they sued the state of Texas and the state of Washington. Yes, Your Honor. When there were perhaps opportunities, we don't know what to make of that dictum by the judge in terms of what might or might not have been available in a Texas court. That really is not before us. That was gratuitous. And I imagine that it was argued and presented to the district court and he or she saw fit to voice the reservations that were raised. But isn't the real problem the fact that not that this is a customer suit or that it flows out of a customer suit or anything else, but that it's in the state of Washington, rather than the state of Texas? Your Honor, with respect, that's not the issue that's before you. The district court had an opportunity to grant subject matter jurisdiction and then transfer to Texas. He expressly declined to do that. Rather, what the district court held was that there is no subject matter jurisdiction because the 11th Amendment is a bar. We think that that judgment must be reversed. It may be that on remand, the district court looks at the equities and decides to transfer to Texas. But if subject matter jurisdiction is denied us in Washington because we're suing Texas rather than Texas suing us, it's also the case that we would face a bar, an 11th Amendment bar, if we tried to intervene in Texas. When Texas waived us to the federal system, it's a one unitary federal system, what we would submit is that if subject matter jurisdiction But they never waived their 11th Amendment immunity in the state of Washington. Even though it's still a federal court, it's not within the jurisdiction of Texas. Your Honor, as this court held in the Regents versus Lilly case, which involved a transfer, a public entity, once it initiates suit in a federal forum, sheds itself of sovereign immunity, it has waived us to the federal system. It's thereby bound thereafter by the transfer rules and other rules pertaining to the federal judicial system as a whole. It doesn't get to pick a forum. The University of Texas doesn't get to pick Austin, the capital and home of its flagship university, as its forum and hang on to that. Once it's waived us to the federal court in Texas, it has waived us to the federal system. Now the customer suit exception is, just like the transfer rules, just like compulsory counterclaims in Knight, the customer suit exception is a venerable rule of an unbroken line of cases upheld by this court that says that the manufacturer is the true defendant. The manufacturer, T. Jekir, is the true defendant in the University of Texas' suit against our customers. The overwhelming majority of the cellular phone defendants in the Texas litigation use our T9 text input software to enable people quickly to input text on a reduced keypad. And our software is what is fundamentally at issue in the Texas suit. We are the true defendant, as Judge Newman wrote for the court in the Katz case. We are, the manufacturer is the true defendant in the customer suit. It is a simple fact of life that a manufacturer must protect its customers, either as a matter of contract or good business, or in order to avoid the damaging impact of an adverse ruling against our products. And since we're on the hook to indemnify our customers, if they're found liable for using the T9 text input software, T. Jekir is a true defendant in the Texas suit. So you should join it there. Why wasn't it joined in Texas rather than Washington? Your Honor, it's a settled practice under the customer suit exception for the declaratory judgment plaintiff, who is the true defendant in the patentee's suit. Who is not a state actor. If this was not a state actor, then you'd have a clear case in the state of Washington, right? Your Honor, if University of Texas were not a state actor, we'd have an absolutely clear case in the state of Washington. It's precisely in order to sue in the form of its choice for a declaratory judgment concerning its patent that the customer suit exception created declaratory judgment subject matter jurisdiction for manufacturers in the first place. But what we submit is that the fact that University of Texas is a public entity does not change the subject matter jurisdiction that's involved in the Washington suit. The subject matter jurisdiction in the Washington suit. I'm sorry, Your Honor, is my time at? You've preserved two minutes, so I think you are, no, you have another two minutes of your principal argument if you wish to use it. Otherwise, we'll add it to the rebuttal time. All right, Your Honor, so let me just try to stress the key point here. You need to reverse the decision below in order for us to even get subject matter jurisdiction to intervene in Texas and assert a counterclaim. The University of Texas has not yet stipulated that we can intervene in Texas. To intervene in Texas and assert a counterclaim against Texas, we believe requires reversal of the judgment below. But we believe that we should be entitled in the first instance to assert ordinary customer suit jurisdiction in our home forum and let the district court on rematch decide the issue of venue, transfer, or whether what the sequence of the lawsuits should be, whether the Texas litigation should be enjoined while the streamlined discussion of the patent issues is completed in the Washington suit. Wouldn't your subject matter jurisdiction be the same in Texas as it is in Washington? Your Honor, the district court has deprived us of subject matter jurisdiction in Washington. We would like to reverse that. Couldn't you have subject matter jurisdiction in Texas under the customer suit exception there as well as in Washington? Yes, Your Honor, but the district court below has said the 11th Amendment is a bar, unless Texas sues us, so we think what the district court has done is deprived us, incorrectly, of an opportunity to bring a customer suit, a suit on behalf of our customers. They've deprived us of subject matter jurisdiction in Washington, and the implication of page 6 of the opinion is they've also deprived us, the district court has also deprived us of subject matter jurisdiction to bring a customer suit even in the Texas one. Now, there would be any subject matter jurisdiction in Washington for anything. Your Honor, that's how the. For anything, if there's not subject jurisdiction in Texas. We believe we have subject matter jurisdiction in Texas or Washington, and it's the plaintiff's choice in a customer suit declaratory action pickets forum. But you have a second hurdle for your Washington suit. Your Honor, what we've done in Washington is simply done what declaratory judgment complaints always do in the customer suit context. We've created the mirror image of a counterclaim in the original action. If UT had sued us in the first place, there'd be no question they waived us to us. They studiously avoided suing us, suing our customers instead. The customer suit exception exists to enable the manufacturer who's the true defendant to come forward and avoid his customers being put to stealth litigation by the patentee. It shouldn't make any difference that Texas is a public patentee. That's what creates seriously unfair results. To exempt, what district court below has basically held is that the customer suit exception does not apply when the public patentee sues for patent infringement against our customers. And that's exactly the kind of seriously unfair result that the Supreme Court cautioned against in Lapidus and this court held against in Knight. If we could have had subject matter jurisdiction, Judge Archer, in Texas, because UT has effectively waived there against a declaratory judgment action by us as a manufacturer, then there's no reason why we don't have subject matter jurisdiction in Washington. Your Honor, if in Washington we determine that Texas would be a better venue on remand, that's a separate issue. But we don't even get to that unless you reverse the district court's ruling below. I'll reserve the remainder of my time. Thank you very much. One question, Ms. Sullivan. With respect to the covenant not to sue. Yes, Your Honor. Does that eliminate the jurisdiction on the claim against Texas? No, it does not, Your Honor. No, the covenant not to sue does not eliminate subject matter jurisdiction here. First, it's a very narrow covenant.  But it has steadfastly refused to stipulate, as we've requested, that they will not sue our customers for use of T9 software or they will not claim that T9 software infringes when used by our customers. Well, does that covenant not to sue also cover inducement or contributory infringement by teaching? The covenant not to sue that they've offered does cover all forms of infringement by teaching. All forms of infringement. That's correct, Your Honor, but. So does that prevent you from having to enforce or your customers enforce the potential third party indemnification? Absolutely not. Our customers are still liable to be sued by TGCR. In fact, this court has set an arrowhead that we have subject matter jurisdiction as long as we have reasonable apprehension that either we or our customers will be sued. Here, we not only have reasonable apprehension that our customers will be sued, our customers are being sued, and there's no settlement with them. So the subject matter jurisdiction arises notwithstanding the covenant not to sue us because our customers can be sued and they have come after us for indemnification. That gives us economic injury and continuing threat of liability. That means that the covenant not to sue does not destroy the case or controversy here. But it does cover indirect infringement. Only by TGIC as a party. If the customers are found to have contributory infringed by enabling end users, to input the software, they can still come after us for indemnification. Under the indemnification agreement. That's correct, Your Honor. The customers can, under the indemnification agreement. That's correct, Your Honor. Not under the covenant not to sue. Because you're protected from the UT from. That's correct, Your Honor. That's exactly right. And the reason why we still have a disagreement with UT, the reason why we still have a live case or controversy with UT, is that UT agreeing not to sue us does not protect us at all from our customers suing us. And as long as we have a legal obligation to reimburse our customers, to indemnify our customers, we still have a live issue with UT even if it decides not to sue us. If UT had agreed to a broader covenant not to sue, not to sue on the ground that T9 software ever infringes or contributes to infringement, that would be a different matter. Because that would immunize us from customer indemnification. But TGIC made a strategic determination to sue in the state of Washington rather than intervene in the state of Texas. You might have to live with those consequences, don't you think? Not if there's an incorrect judgment, Your Honor. Your Honor, if the. What is incorrect? The 11th Amendment ruling. The 11th Amendment does not protect UT in the state of Washington? No, it's not. That's not the ruling, Your Honor. The district court has said the 11th Amendment does not. The 11th Amendment protects a public entity from any customer suit. The district court does not rest on the fact that we went to Washington. Nothing here in this decision below is about venue or transfer or correct venue or which is the better forum. What the district court said is, 11th Amendment is waived only to named defendants and compulsory counterclaims. And we submit that this is an issue of first impression in which you should acknowledge that there's one more thing the UT did. The UT did, it waived not only as to the named defendants, but it waived as to the unnamed true defendant in this case. When UT sued our customers, it in effect sued us as the true defendant as this court held in Katz. A manufacturer is the true defendant when its own software is what is fundamentally at issue in the Texas suit. There would be a terrible unfairness if we can't either bring a declaratory judgment action in Washington or a declaratory judgment action in Texas or intervene in Texas and then counterclaim, but that's what the district court has barred us from. So the 11th Amendment doesn't allow us to come at University of Texas when we're in the plaintiff's capacity in any forum. And we'd like you to reverse that. We express no opinion on this appeal, whether Washington or Texas is the better forum. That's a venue question for the district court to resolve on remand. All that we ask is that you reverse this 11th Amendment ruling, which knocks us out of subject matter jurisdiction in Washington and which the district court suggests would even knock us out of subject matter jurisdiction in Texas. If you have any concern that Washington's the wrong place, we would be happy for you to say that we have subject matter jurisdiction in Texas and we can intervene in Texas. But without that ruling right now, the 11th Amendment stands in our way. We might be displaced from this lawsuit altogether, even though we're the true defendant. Thank you very much, Your Honor. Thank you, Ms. Sullivan. Mr. Shaw. May it please the court. What you've just heard is that they're claiming that the suit by the University of Texas, the Board of Regents of the University of Texas system, which is not a public university, by the way. It's nine men and women appointed by the governor to oversee 15 higher education institutions within the system. I'm sorry, you said it's not a public university? Is it not an arm of the state? It's an arm of the state. It is a body that is appointed by the governor of the state of Texas to oversee operations of 15 universities and medical schools within the UT system. It's not, in and of itself, a public university. It is not the University of Texas. This patent, actually, the inventor of this patent was at the University of Texas at Arlington. So you're saying that they don't have 11th Amendment protection? They do have 11th Amendment protection, but, I mean, I think... So what are you saying? It's not a state entity? It is a state entity. It's not a public university. And I just wanted to correct that in the record, because what they've tried to claim in their personal jurisdiction argument is that the University of Texas is the actual entity. So offices for recruiting students in Washington would be part of the Board of Regents. It's just too completely... Well, I'm still confused. Well, that's not before us. No, it's not before us. I just wanted to correct that in the record, because it's something that they've repeatedly said. In the state of California, for the university system, there were statutes and all else which identified the university system as an arm of the state. It may actually have used those words. I don't remember anymore. I had assumed, because until this moment, nobody had raised the question that the University of Texas is similarly protected, but you... It is. The Board of Regents of the University of Texas system is similarly protected. And actually, there's a case out of this court on that very topic, Ex-Chem International versus the University of Texas M.D. Anderson Cancer Center and the Board of Regents of the University of Texas, 382 F. 3rd 1324. It's not disputed that they're an arm of the state. And I'm sorry I even brought that up and caused any confusion, but it's not disputed by any of the parties. And there is a state statute that creates the Board of Regents as an arm of the state of Texas. But getting back to the actual core issues of the case, the argument that was just made was that this, again, they keep saying that this is a customer suit exception case, as if by saying that repeatedly, that that makes it true. If you could say something repeatedly and make it true, I'd be 6'4", because I'd go in my room and say I'm 6'4 all day long until it was true. Well, they're really saying that if you, if in fact, there was an entitlement to sue the university in Texas, then that takes care of the 11th Amendment. And therefore, the choice of venue is secondary. Absolutely false. First of all, what the trial court understood and what is very clear in the case law, and the cases are Feeney and the Pennyhurst State School and Hospital, two U.S. Supreme Court cases, sovereign immunity has two components. One component is whether or not you're going to allow. This isn't sovereign immunity. This is 11th Amendment immunity, which is different. Which is the same, which is the same cases, the Pennyhurst case and the Feeney case, both are 11th Amendment immunity. And 11th Amendment immunity has two components. The first component is whether or not the state, the sovereign, is going to allow themselves to be sued. The second is they get to. It says that they can waive their immunity, but first you have to establish that they have it before they can waive it. Correct. And I don't think it's disputed. It's undisputed that the immunity stands under the 11th Amendment for the Board of Regents. The second question is after they decide, are they going to waive it? Is where are they going to waive it? They have the ability under the Feeney case, U.S. Supreme Court case and the Pennyhurst case. You have to look at both. Have they waived it? And two, where did they waive it? And they miscite the Feeney case in their brief by saying that the Feeney case doesn't stand for whether or not you waive sovereign immunity to a particular venue, but to a particular system. Reading of the Feeney case, that's just absolutely wrong. The Feeney case that they only waive sovereign immunity as to federal courts within the District of the Port of New York. And that is what the whole question was about. It was a venue question. And the finding that they had waived only was waiver as to federal courts within the venue of the Port Authority of New York. Similarly, in the in the compulsory counterclaim context, if you buy your litigation conduct to sue someone, you are every single case since the prepaid college case says that it's the compulsory counterclaims in the same form. That's what the Knight case, which I believe, Judge Newman, you were on that panel held. That is what every case has held since the college prepaid savings cases. You only waive compulsory counterclaims in the same forum. What they're saying is, first of all, the customer suit exception doesn't apply because we didn't sue Tejik's customers. We sued Motorola's software is used by some of these people. There's another company called Zy Corporation. Tejik is one of three. And in the customer suit exception, generally, I've never seen a case. You may be familiar with one. The only people who are sued are the customers of the person claiming the customer suit exception. There are no other defendants because you. Why? Why should that matter? Isn't that a peripheral issue? Whether they whether this manufacturer provides the entire system or simply a component, particularly if and I think it wasn't disputed for the purposes of this case, that it is the component provided by Tejik, which is the subject of the patent for which infringements. It's very disputed. I mean, this is a method claim that requires a signal generating keyboard, which the signal generating keyboard has been already been construed in a claims construction, a certain way, certain types of displays, transmitting memory RAM components all mixed together. This is one component. And whether they did a very bad job of contracting. So they identified people for something that they cannot possibly on their own infringe. That doesn't give them the right to hijack a case to Washington. And even if they were going to recall the university stating that the component provided by Tejik is not infringing the component provided by Tejik provides one of the five element method claim by itself, by itself, that cannot possibly infringe claims 10 and 11 of the patent. And without it, the claims can't be infringed. Oh, certainly. Because every component, every element in a claim must be manifested in the accused system before there's a patent infringement. You do not have to use Tejik's software. There are other softwares available out there that could be used. That could be substituted in. And in fact, some of the defendants in the Texas litigation are using other people's software. So and again, if what they're saying is that really this is a suit against them, which it is not, it is it was never intended to be a suit against any of the software manufacturers. I guess what happens now is if this court says that a component manufacturer has the right to sue a sovereign in any federal court in the system, but are you subject to some venue challenge? I'm sorry. If we or the court were to determine that the Tejik system is essential to infringement, that your position would have to be different in terms of the 11th Amendment. Absolutely not. It would absolutely not be different. We did not consent to be sued from Guam to Puerto Rico, from Maine to San Diego. You don't have to consent as a matter of the obligatory waiver. These are the very circumscribed waivers of immunity that the Supreme Court has imposed in explicating the recent 11th Amendment cases. It's not a voluntary waiver. It is absolutely one of the ways. There are two ways to waive through litigation conduct. To remove a case to federal court is one. Or to file in federal court, and the waiver is strictly limited to compulsory counterclaims. You can't even file a counterclaim that's not compulsory. And what they're asking this court to do is to allow a third party. I don't think that's accurate. I'm sorry? I don't think that's accurate. I thought that what the case has said, at least in California, is that the waiver can affect, for instance, such matters as set-off, which might not be a compulsory counterclaim, and other aspects which arise from the same set of facts and are, at least, and I'm paraphrasing, digging back into memory, that are rationally related to the case. That's a matter of counterclaim when the amendment has already been waived by the state entity. Set-off is compulsory. You can't go file in a separate lawsuit a set-off. It has to be done in the same suit. That's absolutely compulsory. And Knight says, compulsory counterclaims. That's what the Knight opinion says. That was the situation, was it not? And if you look at the test, and the test is in College Savings Bank, and the test there is described as stringent. It says there is, quote, no room for the doctrine of constructive waiver. And what they're asking for is plainly a constructive waiver, that we've constructively waived, not only for the defendants in the case, but we've constructively waived for them to go sue in a different form on an affirmative claim. And this Eli Lilly case that they cite is absolutely off point. It says right there in the case, this is not an 11th Amendment case, because there were no counterclaims. If we as University of Texas file somewhere, and it gets transferred somewhere else, and there are no counterclaims, we can't complain based upon 11th Amendment immunity, because there are no claims against the state. They have repeatedly miscited that case as they miscited the Genentech case. What it comes down to is there is no constructive waiver. What they've said is, this is a constructive waiver that we have constructively waived as to third parties to sue in different forms on claims that we have absolutely covenanted they couldn't raise the counterclaim. But you're saying that the claim of patent invalidity or infringement or whatever is not a compulsory counterclaim in a suit for infringement? A third party has no compulsory counterclaim. A third party has to be sued. A counterclaim is a claim in response. And there's no claim against them. So if we decide that as the provider, they have an interest, they're no longer a third party. Well, that's the other strange thing about this. What the college savings case also says is there has to be a judicial need for any expansion. This law firm is the law firm defending the University of Texas cases in Austin. They've raised the same invalidity defenses in Austin. They've raised the same inequitable conduct enforceability defenses in Austin. Every single thing is in Austin, controlled by the lawyers for TEJIC, hired by TEJIC, which is now an undisclosed. We've still never seen this indemnity obligation. They've refused repeatedly to produce it. I heard today for the first time, I guess it's a judicial omission that they're on the hook. But this is the first time I'd ever heard that. In fact, they have denied that previously in discovery responses. So that's interesting. I'm not sure I understand that issue you're pursuing. The issue in college savings says you never find a waiver of sovereign immunity unless there's a judicial need. What's the need? They have identified three problems, they say, in their briefing. They say our licensees aren't as motivated as we would be to defend. They're defending. That judicial need goes away, if it ever was a legitimate judicial need. The second one is our poor licensees don't know our software as well as we do. Again, TEJIC is paying for the defense and paying for the lawyers in Austin. So that's obviously a illegitimate judicial need. It's no need. All of the reasons why they claim this is unfair are completely obviated by the fact that they are paying for the lawyers and they are putting on the defense in Texas. So what this is, basically, instead of if they really stand in the shoes, if they really believe this is a suit against them, they should have filed the case in Texas in the same forum and said, we have a right to be here in this forum and we have a right to present these issues. That's not what this is about. Oh, Mr. Schor, isn't it really a basis of the customer suit exception trumping the 11th Amendment? Yeah, that's what they're saying. They're saying that this venue provision trumps the 11th Amendment. And it's a venue provision which, frankly, we believe is outdated. The cases from this court that have even the customer suit exception, all are cases that were filed prior to the 1988 amendments. The opinions came out in 89 to 90, but the cases were originally filed prior to 1988. There's some district court cases that do that. But the whole basis of the customer suit exception was where, when the manufacturer, there was no venue. Venue could not be had against the manufacturer where the case was filed. So a manufacturer was forced to say, I give up my rights to venue in order to appear. And I don't want to give up my rights to venue in order to appear. So I get to sue in a venue where I have the right to be. That's what the customer suit exception was about. With the changes in 1988, that goes away. TEJEC, clearly, there's jurisdiction where TEJEC could have been sued in Texas. They don't have the claim that there's a better. This is a hijacking for venue purposes. That's all this is. If they really believe that they were the party in interest and the reasons they gave in their brief were the true reasons, they would have gone to Texas and said, we are the real party in interest. We have a better interest. And we should be the party here. And let Judge Sparks make that decision. And if it comes up here and he says, no, 11th Amendment, you have a different issue before you. You have an issue of whether or not this would really apply and should they be allowed to intervene. What they've tried to do is avoid that and grant their own 1404 motion to Washington. And the idea that this is the most convenient form is you don't have the whole record before you, but it's laughable. There are witnesses in Canada, China, Taiwan, Korea, Texas, California, Washington, North Carolina. There have been witnesses identified in at least 13 or 14 states and seven countries. France, Sweden. So the idea that Washington is somehow clearly the place where this case belongs, again, simply by saying it doesn't make it true. This is an attempt to take away the University of Texas' choice of forum, which is Texas, where there is personal jurisdiction, where there is venue over everybody. And clearly, that's where they chose to be. Now, getting back to, I think, just the core issue here is what happens if you say the customer suit exception, first of all, it doesn't apply. But for the sake of argument, let's say it does apply. And you say, OK, go back to Washington. Motorola then says, wow, I've got customers who are being sued there. So I'm going to go file a declaratory judgment case in Schaumburg, Illinois. And then Xi Corporation, a Canadian corporation, is going to say, wow, I've got customers being sued. So I'm going to go sue them in Maine, or wherever it is that they think is a place. This is part of a campaign of vexatious litigation by TEJIC. They originally started this campaign by threatening to disqualify and economically threatening the University of Texas lawyers, trying to get their lawyers to quit. And then when the lawyers were going to quit, supposedly, run off and file a case in Washington. That's totally off the record, though. That's not part of the record, is it, Mr. Shor? I'm not sure if it's part of the record in Washington or not. It may not have come up on appeal. But I mean, this is literally just another part of a scorched earth tactic by a defendant. And it should not be. That's not part of the record. So let's not put it on the record. I think the entire issue is whether or not college savings has changed the landscape to the point where the issue of customer service exception is not available, except in the forum where the state entity sues. Isn't that the real issue? I think that is a real issue, a strong issue. And obviously, it did change the landscape because it vacated and remanded Genentech in consideration of it. Rightfully or wrongfully, we have to follow it. Rightfully or wrongfully, we have to follow it. And I believe that the 11th Amendment is quite clear. If you look at the Feeney case and the Pinehurst case, there's two parts of it. Are we going to consent to suit? And we get the right to say where. And when you sue someone, you have consented to where you're going to be sued in return, in the same case on compulsory counterclaims. And if you ignore the venue part of the 11th Amendment, you're ignoring the Feeney case, you're ignoring the Pinehurst case, two Supreme Court cases which are well cited for the proposition that a waiver of 11th Amendment immunity has two components, subject matter and venue. And we have never consented to be sued in Washington, the Board of Regents. And it never will consent to be sued in Washington. Can you waive subject matter jurisdiction under the 11th Amendment? Well, I don't know if it's waiving it. I would call it you're consenting by the action of filing suit or removing a case. How can you waive subject matter jurisdiction? There is no such thing after college savings of a constructive waiver, of a non-explicit express waiver. And the language of it. But the 11th Amendment is a subject matter issue, isn't it? Correct. So how can you waive subject matter? You can't. In fact, it says, I'll read from the case. It's 678. There is no room for the doctrine of constructive waiver in the Supreme Court's sovereign immunity jurisprudence. And that's exactly what they're asking for, a constructive waiver in favor of a third party in a different form on claims against the state. And if it's not constructive, it would have to be expressed. And how it can be expressed when there's a covenant not to sue, which Judge Lasnik did a very good job of saying, obviously, they're not consenting. They're giving you a covenant not to sue and telling you to go away. Are there any more questions? Any more questions? Good. Thank you, Mr. Schor. Ms. Sullivan, you have two minutes. We'll both run over. Thank you very much, Your Honors. A few quick points. First, this is not a constructive waiver case. This is a case about waiver by litigation conduct. And Judge Gaiarsa, it's not the case that Florida prepaid eliminated the option for states to waive sovereign immunity by litigation conduct. In fact, the Lapidus case comes down after Florida prepaid. And it says that the state sometimes does waive 11th Amendment immunity by its litigation conduct. You said litigation. But that was a transfer from a state court to a federal court. And then in the federal court, the state almost refused to be submitted to jurisdiction. That's right, Your Honor. So that was a waiver of jurisdiction at that point, wasn't it? It was a waiver through litigation conduct through permitting the removal of the case to the federal court. It was a consent to removal. It was litigation conduct consenting to removal. But the litigation conduct here is they sued our customers. This is not constructive waiver. This is waiver by litigation conduct. Now, as Your Honor suggested before, if the plaintiff in Texas had been the Texas Manufacturing Company rather than the University of Texas or its Board of Regents, we plainly would have had jurisdiction to bring a declaratory judgment action as the manufacturer to protect our customers who might come after us and have come after us for liability. And let me be clear. I don't concede that we do owe any indemnification obligations to our customers. What I do want you to understand is that we are receiving those requests from our customers and that our indemnification agreements have been produced to the other side. And the record is undisputed that we have had indemnification requests come out. It's page 842, if you want to see the Vice President of TGIC saying that we have had indemnification requests. Are you providing counsel to your customers in the state of Texas? Absolutely, Your Honor. But there's a big difference because of our indemnification. I'm just asking for the record because that's not part of the record. It's not, Your Honor, but we're happy to represent to you that TGIC is involved, per our contractual liability to our customers in the conduct of litigation in Texas. But we're in the unfair position of being, in effect, a party that's not allowed to be a party in the case under the district court's ruling. The idea that we're somehow a third party that has little to do with this is simply not true. We've been hit with massive discovery requests in Seattle by the University of Texas asking for all the information about T9 software. Ms. Sullivan, excuse me for interrupting. Yes, sir. How does the college savings case impact the customer's patent? Customer suit exception. Your Honor, it does not eliminate it. That's for sure. For private parties. For private parties, it's allowed. What about state parties, state individuals? The core of our position is that after College Savings Bank, sovereign immunity may be asserted by the state, but it may not be asserted in a way that results. It may not be strategically waived to go after our customers, and then strategically invoked to keep us out of the lawsuit. That's the essence of the claim, that it's unfair to waive sovereign immunity one day and sue our customers, waive sovereign immunity as to them, and then suddenly invoke it again when we come along as the manufacturer and the true defendants in the case. As Judge Newman said exactly accurately, the T9 software is essential to this case. It's as if somebody were suing about an ignition patent, and they came along and they said, well, the engine, that you need a gas pedal, too, to start the engine. And so the engine isn't really the fundamental thing. The T9 software is at the core of this case. It's at the heart of the infringement action UT is bringing against them, cellular phone customers, and the overwhelming majority of them. We believe 27 out of the remaining 30 defendants in the case used T9 software. If Texas Manufacturing Company could bring a manufacturer suit on behalf of its company, we think the 11th Amendment does not stand in the way of a manufacturer whose customers have been sued by a public university to come in and defend those customers. If you want to say that we're guaranteed the right to come into the Texas action, and they won't be able to waive the 11th Amendment at us, you know what would happen if we came into the Texas action and we tried to intervene as of right because we'll be prejudiced if we're not in the Texas action. Then UT would suddenly say, oh, 11th Amendment applies to us with respect to your counterclaims because we didn't sue you. What we want this court to do is reverse the district court below to say that the 11th Amendment does not eliminate the customer suit exception when a public university goes after the customers and the manufacturer tries to come in. Serious unfairness would result. With respect, your honors, we don't think Knight came up with some rules, a mechanical rule, that only compulsory counterclaims are waived. We think that the principle of Knight, as this court wrote, was that seriously unfair results must be avoided. And we believe that seriously unfair results will occur if a public university can go after the customers of a manufacturer, and that manufacturer can be manipulated to be held outside of court. So thank you, your honor. Thank you. We must move on. Thank you both, Ms. Sullivan, Mr. Short. Case is taken under submission.